LYMAN L. ADAMS *et al.*

*v.*

J. S. & G. S. RUSSELL.

1. LIEN—*of material-man as against vendor of land improved, who repurchases and promises to pay for materials.* Where a vendor of land reserves a vendor's lien in his deed to the vendee for the unpaid purchase

money, and the vendee erects a house on the land, and executes his note, due one day after date, for the materials used in such house, and then reconveys to his vendor, who, as a part of the consideration for the reconveyance, agrees to pay such note, the party who furnished the materials will be entitled to enforce his lien as a material-man against the whole land, and not merely against its enhanced value.

2. PRACTICE—*excluding improper evidence by instruction.* Where evidence which has been improperly allowed to go to the jury is excluded by instructions, and the court can see that no harm has been done by it, the judgment will not be reversed, but if it is a case of doubt it might be other. wise.

3. DEPOSITIONS—*if properly taken and on file may be used on trial.* All depositions, so long as they are on file in the clerk's office, if properly taken and contain evidence pertinent to the issue, may properly be used in evidence on the trial, and if the party taking the deposition does not, before trial, obtain leave to withdraw it, and fails or refuses to read it himself, it may be introduced by the opposite party.

APPEAL from the Circuit Court of Morgan county; the Hon. CYRUS EPLER, Judge, presiding.

Messrs. DUMMER & BROWN, for the appellants.

Messrs. KETCHAM & TAYLOR, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court:

In the fall of 1870, Thos. H. Watson, having purchased a lot of King, Dayton & Adams, on which he paid $50, to secure $700, the balance of the price, when conveying it to him they reserved a vendor's lien for the amount, in the deed. Watson improved the same by erecting a house thereon. In constructing the house, he purchased of appellees the necessary lumber, for a portion of which he paid money, and for the remainder he gave his note for $183.50, due one day after date, and drawing ten per cent interest per annum. The note was not paid.

It further appears, that, subsequently, Watson being unable to pay for the lot, it was by arrangement reconveyed to King, Dayton & Adams, and they surrendered to him his notes and refunded to him the $50 he had paid on the purchase.

Appellees filed a petition to enforce a material-man's lien for the lumber and materials they had furnished for the erection of the building. A trial was had by the court and a jury, resulting in a verdict in favor of petitioners for $255.68. Defendants entered a motion for a new trial, but it was overruled by the court, and an order was entered for the payment of the money by a day named, and in default of such payment that the lot be sold to satisfy the decree, and thereupon defendants appeal to this court.

It is urged, that the court below erred in permitting Sharp, who was the clerk of appellees when the lumber was purchased, to testify as to what Watson said in reference to the purchase. Watson testified that he was to have the year in which the lumber was purchased in which to pay for it, and in support of that testimony Sharp says, when he dunned Watson he claimed that he was to have a year.

Although this evidence was permitted to go to the jury, it was excluded by the first and second of appellants' instructions. It is seen it did no harm, when all the evidence is considered. Had it been a case of doubt, it might be otherwise.

It is urged that the court erred in permitting appellees to read the answer to the fourth interrogatory in Watson's deposition, because it is claimed that it was immaterial to the issue. We are not prepared to hold that the answer was immaterial. One of the disputed questions was, whether King, Dayton & Adams took a reconveyance, claiming their vendor's lien as being preferred to the lien for the materials. If, as a part of the consideration for the reconveyance, they were to pay this lien, then they took the property subject to it; and the promise to pay this note would give the material-man's lien a preference over their vendor's lien. In that point of view, and for such a purpose, it was not immaterial but was highly proper.

It is next urged, that the court erred in permitting appellees to read the cross-examination to Watson's deposition. We see no objection to such a practice. It has always been understood, that where one party takes a deposition, unless he

obtains leave before the trial and withdraws it, if he fails or refuses to read it, the other party may introduce it. All depositions, so long as they are on file in the clerk's office, when properly taken and containing evidence pertinent to the issue, may properly be used as evidence on the trial.

We are not of the opinion that when the language of the first, second and third of appellees' instructions is considered, they are obnoxious to the criticism urged against them. In the first, the jury are not directed to find whether appellees have established their lien, but to determine whether they had established their claim for lumber furnished under the contract, etc. This was proper, as that was one of the issues of fact they were trying. In the second they are told, that if they were satisfied that a lien had attached for the lumber, it would not be defeated by a conveyance of the lot. The court had, in substance, told the jury in the first instruction what facts would constitute a lien, and it was not necessary to repeat them in the second. In the third, the court informed the jury what would create a lien on the lot, and what they must find to have been proved to warrant a verdict for appellees, and then instructs them that if they believed they had established their claim, and they did furnish the lumber, and the money was unpaid, they should find for petitioners. The court had, in this instruction, told them what would constitute a lien, and when the suit should be brought to preserve it, and that they must find the facts to have been proved. When the whole instruction is considered, we fail to see that it left a legal question to their finding, but only submitted facts for the purpose. We perceive no objection to this instruction.

As to the seventh instruction asked by defendants, and refused, it is only necessary to say that the substance of all it contained was embraced in others that were given for them. Hence the court was not required to repeat what the jury had already been told.

. It is urged, that when King, Dayton & Adams repurchased, it was done as a foreclosure of their vendor's lien, reserved in their conveyance to Watson—that it cut off the lien of appel-

lees, or at least they could only have a lien on the enhanced value of the property. It could not operate as a foreclosure to cut off the lien of appellees, as they were not parties to or consenting to the arrangement. Their rights could not be thus disposed of without their consent, or at least being a party to some proceeding designed to have that effect.

If the arrangement to reconvey embraced an agreement on the part of King, Dayton & Adams to pay and discharge the note given for the lumber, and out of which the lien arises, as Watson testifies was the fact, then the whole of the property must be held liable. In that case they received, by the conveyance, a consideration from Watson in the price of the land, and having received the consideration it is but the simplest equity that they should pay it, or the land be sold to discharge it.

But it is said that Adams denied that any such agreement was made. It was for the jury to weigh and consider the evidence, and find where the preponderance was, and having done so, we perceive no reason to disturb their finding.

All the evidence considered, we think it sufficient to sustain the verdict, and the decree must be affirmed.

*Decree affirmed.*