WALLACE, MULLER & COMPANY (LIMITED), DEFEND-
ANTS IN ERROR, v. EDWARD F. LEBER AND LOUIS
MEYER, PARTNERS, &c., PLAINTIFFS IN ERROR.

Argued March 13, 16, 1903—Decided July 20, 1903.

1. Defendants, by a contract in writing, agreed to indemnify the
   plaintiffs with respect to the duty upon four thousand bags of
   sugar, bought that day by the plaintiffs from Messrs. Bunge &
   Company, through the mediation of the defendants. *Held*, that,
   when sued on their contract, the defendants were entitled to
   exhibit, at the trial, the contract of sale between Messrs. Bunge
   & Company and the plaintiffs, of even date therewith, for the sale
   of four thousand bags of sugar, made through their mediation,
   in so far as such contract described or tended to identify the
   subject-matter of their indemnification; but that they were not
   entitled to treat the other provisions of such contract of sale as
   conditions precedent to their contract of indemnity.
2. A deposition taken under section 45 of "An act concerning evi-
   dence" (*Pamph. L.* 1900, *p.* 375), and returned and filed with the
   court in which the action is pending, or with the clerk thereof,
   is, so long as it remains a file of such court, to be treated as testi-
   mony delivered in the cause, which either party may read to the
   jury.
3. If a deposition contains no competent proof favorable to the party
   who seeks to read it to the jury, he is not injured by the denial of
   his abstract right in this respect.

On error to the Supreme Court.

The writ of error in this case brings up for review the
judgment entered in the Supreme Court, in favor of the
plaintiffs, in the sum of $3,435.15, upon a verdict of a jury
rendered at a trial at the Hudson Circuit, before Mr. Justice
Collins.

The action was brought to recover damages for the alleged
breach of two contracts, reading, respectively, as follows:

"WALLACE, MULLER & CO.,
            Limited.

                            "NEW YORK, Sept. 19th, 1897.
"*Messrs. Wallace, Muller & Co., Ltd., 48 Pearl St., City:*
    "DEAR SIRS—In accordance with our agreement, we hereby
guarantee to you that the duty on the 4,000 bags of Dutch

sugar, bought to-day from Messrs. W. Bunge & Co., Rotterdam, through our mediation, shall not exceed $1.95 per 100 lbs. Any excess in duty which you may be called upon by the government to pay will be promptly refunded by us to you without any objections whatsoever.

"Yours very truly,

"LEBER & MEYER."

"WALLACE, MULLER & CO.,
        Limited.

"NEW YORK, Sept. 24th, 1897.

*"Messrs. Wallace, Muller & Co., Ltd., 48 Pearl St., City:*

"DEAR SIRS—In accordance with our agreement, we hereby guarantee to you that the duty on the 4,000 bags of Dutch sugar, bought to-day of Messrs. W. Bunge & Co., Rotterdam, through our mediation, shall not exceed $1.95 per 100 lbs. Any excess in duty which you may be called upon by the government to pay will be promptly refunded to you by us, without any objections whatsoever.

"Yours very truly,

"LEBER & MEYER."

The contracts of sale were as follows:

"EDWARD F. LEBER.                          LOUIS MEYER.

LEBER & MEYER,

Importers, Exporters and Commission Merchants,

3, 5 & 7 William St.,

and

3 South William St.

"Cable Address:                Telephone, 937 Broad.
Leber, New York.
A B C Code.

"NEW YORK, Sept. 18th, 1897.

"Sold for account of Messrs. Bunge & Co., Rotterdam, to Messrs. Wallace, Muller & Co., Ltd., two thousand (2,000) double 100-pound bags Dutch Granulated Sugar, W. S. R., at

G. S.

12–6 (twelve shillings and six pence) per 112 pounds net, cost and freight New York, shipment per steamer from Holland on or about October 6th, 1897.

"Two thousand (2,000) bags as above at 12–7½ (twelve shillings seven and one-half pence) per 112 pounds net, cost and freight New York, shipment per steamer from Holland on or about October 23d, 1897.

"Terms of payment—Buyers agree to open 90 days' date letter of credit in favor of Messrs. W. Bunge & Co., Rotterdam, on London bankers and to cover marine insurance. Sellers are to have the option of drawing 90 days or 60 days, allowing buyers in latter case ¼ per cent. on invoice.

"LEBER & MEYER,
"Agents.

"Accepted—
"WALLACE, MULLER & Co., LIMITED."

"*Documents to consist of bills of lading, consular certificate and certificate signed by the mayor of the city where the refinery is situated, attested by U. S. consul, as per attached form.*

"*Leber & Meyer.*"
"*Wallace, Muller & Co., Limited.*
W. L. W.

[*Name of county.*]
[*Name of place where certificate is issued.*]
[*Date.*]

"*This is to certify that the sugar specified in the annexed invoice is the product of* [*name of country*]*; that no indirect bounty has been received thereon in excess of the tax collected upon the beet or cane from which it was produced, and that no direct bounty has been, or shall be, paid thereon.*

[*Signature of the officer authorized by the government of* ............. *to issue such certificate.*]

"*I,* ..................., *Consul of the United States, at* ............., *hereby certify that the above signature is that of the officer authorized by the* ............. *government to issue the same.*

[*Seal.*]
[*Date.*]

......................
"*United States Consul.*"

"EDWARD F. LEBER.                    .   LOUIS MEYER.
LEBER & MEYER,
Importers, Exporters and·Commission Merchants,
3, 5 & 7 William St.,
and
3 South William St.

"Cable Address:·            Telephone, 937 Broad.
Leber, New York.
A B C Code.

"NEW YORK, Sept. 24th, 1897.

"Sold for account of Messrs. W. Bunge & Co., Rotterdam, to Messrs. Wallace, Muller & Co., Ltd., New York City, two thousand (2,000) double 100-pound bags of Dutch Granulated Sugar, 'W. S. R.,' shipment first week of November,
G. S.
and two thousand (2,000) double 100-pound bags Dutch Granulated Sugar, 'W. S. R.,' shipment second week of No
G. S.
vember from Holland, by steamer to Baltimore, at 12–7½ (twelve shillings and seven and one-half pence) per 112 pounds net, cost and freight Baltimore.

."Terms—Buyers agree to open letter of credit with their London bankers, in favor of Messrs. W. Bunge & Co., for· this purchase 90 days' or 60 days' date less ¼ (one-quarter) per cent., at sellers' option, and to cover marine insurance inclusive of lighter risks.

"Bankers' acceptance to be given in exchange for bills of lading, consular invoice and certificate from refiners, attested by the mayor of the city where the refinery is located, showing the country of origin of this sugar and that no export bounty is received on the exportation of this sugar, and this certificate to be sworn to before the United States consul.

"X refined.

"XX steamer.                    "LEBER & MEYER,
                                   "*Agents.*

"Accepted—
       "WALLACE, MULLER & Co., LIMITED.
                         "W. L. WALLACE, *Ts.*"

With regard to the contract of sale of September 18th, there was a dispute upon the trial as to when the italicized portion of the contract was executed, the defendants contending that it was executed simultaneously with the previous portions of the contract, and with the contract of indemnity upon which suit was brought, dated September 18th, 1897, while the plaintiffs claimed that it was executed some days subsequently thereto.

Under the ruling of the learned trial justice in his charge to the jury this is unimportant inasmuch as he ruled that the italicized portion became a part of the contract.

A provision substantially similar to that of the italicized portion of the contract of sale of September 18th, 1897, is found in the body of the contract of sale of September 24th, 1897.

Certain sugar arrived in the United States, and Wallace, Muller & Company were called upon by the United States government to pay or deposit a certain amount of money pending the determination by the government as to whether any countervailing duty was leviable upon such sugar. Thereafter the United States government determined that countervailing duty was due, inasmuch as the Dutch government paid export bounty, and determined the amount of such countervailing duty. The entries were thereupon liquidated, and a portion of the money deposited by Wallace, Muller & Company was retained by the government.

Messrs. Leber & Meyer were called upon to refund this to Wallace, Muller & Company, and they declined, whereupon this action was brought.

The two main defences set up and relied upon by Messrs. Leber & Meyer were:

*First.* That the documents specified in the italicized portion of the contract of the 18th of September, and in the body of the contract of the 24th of September, did not accompany the shipments, and that this relieved Messrs. Leber & Meyer from their contract of indemnity, it being their contention that it was the duty of Wallace, Muller & Company's bankers

not to accept the drafts drawn upon them when they found that the documents accompanying the bill of lading did not conform to the contract requirements.

*Second.* That the sugar which was accepted by Wallace, Muller & Company, and upon which they paid countervailing duty was not "Dutch Granulated Sugar, W. S. R."
G. S.

As to the first point, the learned trial justice charged the jury that the facts were as claimed by the defendants, but that, as matter of law, this did not relieve them from their contract of indemnity.

As to the second point, the learned trial justice submitted the question to the jury, whether the sugar upon which the duty was paid was "Dutch Granulated Sugar, W. S. R."
G. S.
within the meaning of the contract, upon which question the jury found in favor of the plaintiffs.

The defendants thereupon brought this writ of error, assigning as error certain portions of the charge of the learned trial justice; his refusal to charge certain requests submitted by the defendants, and the exclusion of material testimony upon the one question submitted to the jury, as well as the denial of the motion to nonsuit the plaintiff.

In a previous action between these parties upon a contract of indemnity in all respects similar to the contracts upon which the present suit is brought, Mr. Justice Lippincott, before whom the cause was tried, a jury being waived, found as a fact that the memorandum requiring the certificates was not a part of the contract of sale, hence the first point now raised by the plaintiffs in error was not passed upon by this court in its opinion affirming the judgment then before it. *Wallace, Muller & Co.* v. *Leber & Meyer,* 36 *Vroom* 195.

For the plaintiffs in error, *Coult & Howell* and *Herbert R. Limburger* (of the New York bar).

For the defendants in error, *Albridge C. Smith.*

The opinion of the court was delivered by

GARRISON, J.    The contract of the defendants, Leber & Meyer, by which they agreed to indemnify the plaintiffs against any duty upon four thousand bags of Dutch sugar in excess of $1.95 per hundred pounds was an independent undertaking upon their part, made in their individual capacity and not as agents for Bunge & Company, the vendors of the sugar. The fact that as vendors' agents they had brought about the sale of the sugar did not have the effect of reading into their contract of indemnity with the plaintiff any provision of the contract of sale made between Bunge & Company and the plaintiffs save, as by apt reference thereto, certain provisions of the earlier contract were legally incorporated in the later one.    This is not a mere rule of evidence governing the admission of testimony; it is a matter of substantive law touching the effect of written contracts, and, as such, presents normally, and in the absence of equivocal language, a court question.

The question in the present case was whether the defendants' contract with the plaintiffs was an absolute agreement of indemnity, or whether it was a qualified undertaking conditioned upon the performance by Bunge & Company and the plaintiffs of a provision in their contract of sale by which certain certificates from the refiners of the sugar were to be furnished by Bunge & Company in exchange for acceptances of their bills by the plaintiffs' bankers.

The language of the defendants' contract is free from ambiguity.    It is brief, and in these words: "New York, September 18th, 1897.    Messrs. Wallace, Muller & Company, Ltd.    48 Pearl Street, City.    Dear sirs: In accordance with our agreement we hereby guarantee to you that the duty on 4,000 bags of Dutch sugar bought to-day from Messrs. W. Bunge & Co., Rotterdam, through our mediation, shall not exceed $1.95 per 100 lbs.    Any excess in duty which you may be called upon by the government to pay will be promptly refunded by us to you without any objections whatsoever. Yours very truly, Leber & Meyer."    This, on its face, is an absolute undertaking, subject only, as all contracts are, to

the identification of its subject-matter, to which end the con-
tract of sale is sufficiently indicated to authorize reference to
be made to it for the purpose of ascertaining what sugar the
plaintiffs had that day bought of Messrs. Bunge & Company,
Rotterdam, through the mediation of the defendants.    To
that extent, the language of the contract of sale is to be read
into the contract of indemnity.    The defendants, however,
insist that by such reference the entire contract of sale, with
all of its incidents and accompanying provisions, became
legally embodied in their contract of indemnity as conditions
precedent, failure to perform any one of which by Bunge &
Company or the plaintiffs would absolve the defendants from
their bargain with the latter; or, if this be not so, that at
least a latent ambiguity was established that opened the case
to proofs as to the intention of the parties and the meaning
of their contract with the consequent submission of the entire
question to the jury.

The learned trial justice ruled against each of these con-
tentions, holding in effect that there was no ambiguity in the
defendants' contract and that the requirement as to certifi-
cates, contained in the contract of sale, did not enter into the
defendants' undertaking.    This ruling of the learned justice
was clearly right.    The contract of sale covered three general
subjects—(1) the sale by Bunge & Company of four thou-
sand bags of sugar, described as "Dutch Granulated Sugar,
W. S. R.," which, it is admitted, meant Western Sugar Re-
finery.    The specification of prices and dates of shipment
from Holland then followed; (2) a stipulation by the vendees
as to the terms of the payment by them and as to marine
underwriting to be affected by them; (3) a statement that
certain documents, among which were the certificates from
the refiners, were to be given to plaintiffs' bankers in exchange
for their acceptance of the vendors' drafts upon them.

Of these several provisions it will be observed that the
only one bearing upon the identification of the subject of
the defendants' indemnity was that contained in the first
clause, which set forth the date of the sale, the mediation of
the defendants, the number of bags, to wit, four thousand,

the name and description of the sugar itself, to wit, "Dutch Granulated Sugar, W. S. R.," together with the prices and dates of shipment. All of these matters of description, as has already been said, are deemed to be incorporated in the defendants' contract of indemnity by the simple reference to its subject-matter as "4,000 bags of Dutch sugar bought to-day of Messrs. Bunge & Co., Rotterdam, through our mediation." This fully complies with the call of the reference, and exhausts its capabilities.

The other treaties between Messrs. Bunge & Company and the plaintiffs, inserted in their contract of sale, but not conducive to the establishment of the identity of the subject of the defendants' indemnification, are not within the scope of the reference contained in the latter contract, and cannot, by any rule of law, be imported into it, either to enlarge or to restrict its operation or effect. All of the testimony, therefore, that was offered as to tariff regulations at different periods, and as to the intention of the defendants that their agreement to indemnify should be inoperative under certain contingencies, was simply nugatory in view of the ruling of the trial court upon the lines just indicated and approved. The question of the meaning and effect of the defendants' contract was properly withheld from the jury and was properly decided by the trial court, the ineffective testimony that was admitted going for nothing.

No error was committed by the trial court in dealing with this branch of the case.

The question whether the sugar upon which the plaintiffs paid duty was that sold by Bunge & Company to them and referred to in the defendants' contract with the plaintiffs was properly left to the jury. This was the main ground upon which the motion to nonsuit was rested, it being contended then, and before this court, that Dutch sugar was sugar that was both grown and refined in Holland; that there was no evidence that the sugar received from Bunge & Company had been refined in Holland, or that it was the product of the Western Sugar Refinery. Upon each of these proposi-

tions there was testimony that raised an issue of fact. This rendered the submission of the case to the jury upon these points the only proper judicial course.

That the defendants' contract was not without consideration has already been decided in the earlier case referred to and reported in 36 *Vroom* 195. The failure of Bunge & Company to present the required certificates in exchange for the acceptance of its drafts has already been considered in this opinion. There was, therefore, no error in the refusal of the trial court to nonsuit the plaintiffs.

Under a further assignment of error, based upon a proper bill of exceptions, the defendants submit that the trial court erred in refusing to permit them to read to the jury as the testimony of a witness examined in the cause the deposition of Charles H. Waller, that had been taken by the plaintiffs, but had not been offered by them on the trial. Upon the abstract proposition upon which this contention is based I concur in the views advanced by counsel for the defendants. The deposition had been taken upon notice given by the plaintiffs under section 45 of "An act concerning evidence." *Pamph. L.* 1900, *p.* 375. Section 51 of that act provides as follows: "51. The examination of any witness, by commission or deposition taken, returned and filed, as provided for in this act, shall be as competent evidence in the cause in which it shall be taken as if such witness had been examined in open court, on the hearing or trial thereof, * * * and if the testimony be taken under the forty-fifth section of this act, proof being made that notice of the taking thereof was given as therein prescribed." I think that the fair meaning of this language, and the practicable rule to be deduced from it, is that the testimony so given is to be taken as testimony given in the cause and not merely as information obtainable by a party in aid of his line of action or defence, as is the case with interrogatories proposed under the three hundred and forty-first section of the Practice act, wherein it is expressly provided that "the answers shall be evidence in the action if

offered as such by the party proposing the interrogatories, but not otherwise." One practical difficulty that would result from the contrary view is of itself almost conclusive, viz., that if the party to whom notice of taking depositions had been given could not rely upon his right to use the testimony so adduced, he would in all cases be obliged to retake the same proofs, a result so onerous, and, in most cases, so needless, that it cannot well be deemed to have been within the legislative intent. A further practical difficulty in such contrary rule would be that documentary evidence, exhibited before the officer taking a deposition and annexed by him and returned with the deposition so taken, under section 49, could not be produced upon the retaking of the deposition which such contrary rule would render necessary. Finally, the requirement that such deposition, when taken, shall be forwarded or delivered to the judge of the court in which the action is pending, or be filed with the clerk thereof, is a significant indication that thenceforward such testimony is to be regarded as part of the files of the court, subject, so long as it so remains, to judicial rulings as to its competence, but not to the mere will of either of the parties as to its production. The practice of removing depositions from the files before trial, which has been the subject of adjudication in other jurisdictions, need not now be considered.

The contention of the defendants in the above respects is, in the main, supported by the cases decided elsewhere, although the matter must, in its nature, be largely one of special statutory construction. *Stewart* v. *Hood,* 10 *Ala.* 600; *Ansonia* v. *Cooper,* 66 *Conn.* 184; *Rucker* v. *Reid,* 36 *Kan.* 468; *Adams* v. *Russell,* 85 *Ill.* 284; *Pelamourges* v. *Clark,* 9 *Iowa* 1; *Hale* v. *Gibbs,* 43 *Id.* 380; *Bank* v. *Rhulasel,* 67 *Id.* 316; *Little* v. *Edwards,* 69 *Md.* 499; *Converse* v. *Meyer,* 14 *Neb.* 190; *Polleys* v. *Insurance Co.,* 14 *Me.* 141; *Greene* v. *Chickering,* 10 *Mo.* 109; *McClintock* v. *Curd,* 32 *Id.* 411; *Weber* v. *Kingsland,* 8 *Bosw.* 415; *Jordan* v. *Jordan,* 3 *Thomp. & C.* 269; *O'Connor* v. *American Iron Mt. Co.,* 6 *Smith, P. F.,* 234; *Bank* v. *McSpedon,* 15 *Wis.* 629.

There are a few decided cases that hold the contrary view, either upon the language of special rules or statutes or upon general grounds that do not commend themselves in their practical aspect.

The result of my examination is that the trial court acted upon an erroneous view of the general right of the defendants to use the deposition in question. Notwithstanding, however, this errancy in judicial reasoning, the defendants were in nowise injured, for the reason that the deposition itself contained no competent testimony bearing upon any matter of defence open to them. The direct testimony of the witness who was examined was strictly corroborative of the plaintiffs' contention as to the trade significance of the term "Dutch Granulated Sugar." The expressions of the witness upon cross-examination, which was what the defendants desired to exhibit to the jury, were not in contradiction or even modification of his testimony in chief upon this point, but were, at best, non-expert opinions as to the persuasive force that might be accorded to the defendants' contention that certain changes in the tariff law would impart to the trade name in question a significance that it did not previously possess. This was matter of argument, not of testimony. The refusal of the court, therefore, to permit the reading of the deposition, while placed upon an untenable ground, did not deprive the defendant of any legal evidence to which he was rightfully entitled.

A further point argued for the defendants was that the trial court erred in its refusal to charge the jury that if they believed "that by the term 'Dutch Granulated Sugar' the parties to the contract intended different things, and that if their intentions in this regard were both reasonable and justifiable under all the circumstances, their verdict must be for the defendants."

In the absence of equivocal language, which is the case here, the meaning of a written contract is for the court, whose treatment of the contract in issue has already been disposed of with approval.

The defendants also contend that the court should have charged to the jury the following request: "From the failure of plaintiffs to call Mr. Neumark as a witness, you are entitled to infer that if called as a witness his testimony would not have been favorable to the plaintiffs."

This request was properly ignored.

The court properly refused to charge the following request: "If you believe that the plaintiff would have made the contract of purchase of the 18th and 24th of September even without the agreements of guaranty upon which this suit is brought, your verdict must be for the defendants."

Further errors are assigned upon the refusal to charge other requests, and to the charge as delivered, which raise, however, no pertinent questions of law that are not covered by the assignments that have already been considered.

Finding in the conduct of the trial below no error prejudicial to the defendants, my conclusion is that the judgment in favor of the plaintiffs should be affirmed.

DIXON, J. (dissenting). The opinion of the court in this case concedes that the agreements of September 18th and 24th, 1897, between the plaintiffs and defendants, on which the suit was brought, were made in consequence of and with regard to the contracts of like date between the plaintiffs and Bunge & Company, and that, in ascertaining the obligation of the defendants, some reference must be made to those contracts. The opinion, however, confines the purpose of this reference to the *identification of the subject-matter* of the defendants' agreements, while I would deem it more reasonable to declare the purpose to be the ascertainment of every clause in those contracts which was material to the obligation of the defendants; for each of the Bunge contracts is an entirety, and I perceive no ground on which it can be held that these parties had respect to some portions of those contracts and not to all parts material to their own bargains. But let it be assumed that the reference is limited to the identification of the subject-matter; what is that subject-matter? The

opinion rests on the idea that it is the *sugar* bought by the plaintiffs from Bunge & Company. But that is an error. The subject-matter of the defendants' agreements is the *duty* to be paid on the importation of sugar. This is the principal thing, to which the sugar bought is only an incident. Hence, according to the conceded purpose of the reference, we must search the Bunge contracts for every feature by which that matter may be identified. Thus, it might readily be supposed that the duty bargained for would depend upon the country from which the sugar should be shipped, the nationality of the bottom in which it should be carried, the port at which it should be landed, and the time of its arrival. On all these points the defendants' agreements are silent, but on three of them—the country, the port and the time of arrival, so far as it would be determined by the time of shipment and means of transportation—the Bunge contracts are explicit, and it happens that the fourth point—the nationality of the bottom—is unimportant. But can it be that, if the duty on shipments from Holland were less than that on shipments from Belgium, the duty on imports to New York and Baltimore were less than that on imports to Halifax, and the duty on arrivals in the year 1897 were less than that to be imposed on arrivals in 1898, the plaintiffs could have accepted sugar shipped in Belgium for Halifax, by sailing vessel, in December, 1897, instead of sugar shipped in Holland for New York and Baltimore, by steamer, in October and November, 1897, and still have held the defendants to an indemnity against the duty thus chargeable? Such a conclusion would seem to me utterly irrational. But on what ground could it be excluded, if our reference to the Bunge contracts must be confined to the identification of the sugar sold? The true principle is that, by the defendants' agreements, we are referred to the Bunge contracts as entireties for everything therein which is material to the defendants' obligation, or, if we must adopt the limited form of statement, material to the duty which formed the subject-matter of that obligation.

Among the clauses thus material is that requiring certifi-

cates, in one case attested by the mayor of the place where the sugar was refined, in the other case sworn to by the refiners, that no export bounty was receivable on the sugar delivered. The materiality of this clause arose from the fact that, if any export bounty had been received on sugar imported to this country, our government increased the normal duty of $1.95 per one hundred pounds by the amount of that bounty, and thus the bounty became the measure of the defendants' responsibility. As a precaution against the delivery and acceptance, under the Bunge contracts, of sugar on which such bounty had been received, those contracts provided for the payment of the price only on production of such certificates. In my judgment, the defendants are entitled to the benefit of that provision, and the plaintiffs had no right to waive it and still insist on indemnity from the defendants. Although the certificates would not absolutely preclude the levy of a countervailing duty by our government, yet they would render it highly probable that the sugar imported was not subject to such a duty, and therefore that it would not be exacted. The duty for which the plaintiffs now demand indemnity is not the duty that would have been levied, in all probability, if the stipulations of the Bunge contracts on that subject had been performed, and therefore is not, I think, the duty to which the defendants' agreements referred.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, VAN SYCKEL, GARRISON, FORT, GARRETSON, HENDRICKSON, PITNEY, SWAYZE, BOGERT, VREDENBURGH, VOORHEES, VROOM, GREEN. 14.

*For reversal*—DIXON. 1.