## Acme Waste Paper Company, Appellee, v. U. S. Paper Supply Company, Appellant.

## Gen. No. 28,476.

1. PLEADING—*sufficiency of affidavit of defense to raise issue of quality of goods sold in action for price.* In an action to recover the purchase price of a car of waste paper furnished to defendant under a contract calling for "No. 1 Soft White Shavings (free of foreign materials) * * * Mill weights and grading to govern," held, that defendant's affidavit of merits was sufficient to put in issue the question of the quality of the shipment made by plaintiff under defendant's theory that the paper was to be such as would fulfil the requirements of the grading of the consignee and that it had not done so.

2. EVIDENCE—*admissibility of opinion evidence as to meaning of trade terms.* In an action for the price of waste paper furnished under a contract providing "Mill weights and grading to govern" the admission on behalf of plaintiff, of testimony as to the meaning of such provision, given by a witness who apparently was qualified to answer, was proper if it was plaintiff's position that the expression had a well known meaning in the trade.

3. HARMLESS ERROR—*harmlessness of admission of evidence as to meaning of trade term of apparently obvious meaning.* The admission of the testimony of a witness as to the meaning of a phrase used in a contract in the business in connection with which the contract was made was, in any event, harmless where the answer given would seem to be in keeping with the apparently obvious meaning of the phrase.

4. SALES—*construction of sales contract "Mill weights and grad-*

Acme Waste Paper Co. v. U. S. Paper Supply Co., 233 Ill. App. 262.

*ing to govern."* Under a contract providing for shipment by plaintiff of a carload of waste paper of a quality known as "No. 1, Soft White Shavings (free of foreign materials) * * * Mill weights and grading to govern" plaintiff undertook to ship a car of the quality of paper described, the car upon arrival at the mill of the consignee to be subject to the latter's inspection as to whether it complied with the contract.

5. SALES—*sufficiency of seller's evidence to make prima facie case in action for price.* Where plaintiff in an action for the price of waste paper to be shipped to a consignee designated by the defendant introduced evidence tending to show that the car shipped contained paper of the quality described in the contract, he made out a *prima facie* case.

6. EVIDENCE—*when opinion evidence as to ultimate fact not objectionable as conclusion.* The court properly refused to strike opinion testimony that a carload of waste paper, shipped under a contract to furnish a certain grade of paper, was of the grade called for by the contract therein designated by a trade term, on the objection that it was purely a question for the jury what the car contained, since although the question was one of fact it was one of ultimate fact about which a qualified witness could properly give opinion evidence.

7. DEPOSITIONS—*right of adverse party to use depositions abandoned by taker.* A party taking a deposition may, in his discretion, abandon it on the trial and when that is done the other party may use it if he desires, being bound by it to the same extent as any other evidence he proffers.

8. DEPOSITIONS—*filed deposition as part of files not permanently removable.* Where a party, months before a case is reached for trial, takes the depositions of nonresidents, on oral interrogatories at some distant point where they are to be found, the other party appearing and cross-examining the witnesses, and such depositions are returned in due form and become a part of the files and records of the cause, they should not be thereafter removed permanently from the files so as not to be available as evidence in the cause, even if ample time remains before trial to enable the opposite party to take the depositions of such witnesses.

9. DEPOSITIONS—*right of adverse party to have withdrawn depositions restored to files.* To preserve the right of the opposite party to use depositions abandoned by the party taking them the court should have sustained an objection to a motion for the permanent removal of the depositions or, if they had been removed, have allowed a motion to have the depositions restored to the files.

10. WITNESSES—*impropriety of impeachment as to matters for which no foundation laid.* It was error to permit a witness for plaintiff to testify concerning a conversation had with a witness

of defendant in an effort to impeach such witness where, neither upon examination nor cross-examination of defendant's witness, had any reference been made to such a conversation.

11. Evidence—*inadmissibility of hearsay.* Where a witness for plaintiff was permitted to testify as to what was told to him by a deponent whose deposition had been taken in another state and also what was told him by another as to what such deponent had said, the conversations, not being in the presence of defendant, were hearsay and their admission constituted error.

12. Examination of witnesses—*propriety of examination of rebuttal witness.* In an action for the price of waste paper shipped to a consignee designated by defendant and rejected as not being No. 1 soft white shavings free of foreign materials as called for by the contract of sale, where plaintiff called a witness in rebuttal and asked if he knew what was meant by such term it cannot be said that the sustaining of an objection thereto on the ground that it was improper rebuttal was an abuse of discretion.

13. Trial—*impropriety of making offer of rejected evidence for record in presence of jury.* Where a witness was not permitted to testify in rebuttal to a matter on the ground that it was improper rebuttal the court should not have permitted an offer of proof for the purpose of the record to be made in the hearing of the jury.

14. Evidence—*admissibility of pleading in former action to show inconsistent position of party.* In an action on a contract for the purchase by defendant of a carload of paper where the defense was that the paper furnished was not in accordance with the contract, the pleadings in a case brought by defendant in Federal court against the consignee of the paper to whom defendant resold it to recover for the same paper were properly admitted as tending to show that defendant had accepted plaintiff's delivery of the paper to such consignee and had taken a position in that suit inconsistent with that maintained here.

15. Instructions—*when charge not objectionable as ignoring defense of new contract.* The objection to certain instructions in an action on a contract for the sale of paper that they ignored defendant's claim that after the paper was rejected a new contract was made, was not valid where the charge was oral and at one point in it the court told the jury that if they believed from the evidence that the parties did make a new contract they should find the issues for defendant.

16. Sales—*when instruction permitting five per cent penalty on purchase price sued for erroneous.* In an action on a contract for the sale of paper, defended on the ground that the paper shipped was not in accordance with the contract, held, that, under the evidence, a charge that if the jury found that the purchase price had been unreasonably and vexatiously withheld by defendant they

might add to the purchase price an amount equal to five per cent from the day of delivery to the rendering of the verdict was not warranted.

17. APPEAL AND ERROR—*unnecessary questions not considered where retrial necessary.* When a case must be tried again the Appellate Court will not comment upon errors claimed with regard to the verdict returned by the jury.

Appeal by defendant from the Municipal Court of Chicago; the Hon. ROBERT E. GENTZEL, Judge, presiding. Heard in the third division of this court for the first district at the March term, 1923. Judgment reversed and cause remanded. Opinion filed June 11, 1924. Rehearing denied June 24, 1924.

HOPKINS, STARR & HOPKINS, for appellant.

HAROLD J. FINDER, for appellee.

MR. JUSTICE THOMSON delivered the opinion of the court.

By this appeal the defendant, U. S. Paper Supply Company, seeks to reverse a judgment entered against it in the municipal court of Chicago, in favor of the plaintiff, Acme Waste Paper Company, in the sum of $1,723.27. The action was brought by the plaintiff to recover the purchase price of a car of waste paper which had been purchased by the defendant and shipped by the plaintiff, at the defendant's direction, to The Champion Coated Paper Company at Hamilton, Ohio. The consignment had been rejected by the consignee and the defendant claimed that when it advised the plaintiff of the action of the consignee, the plaintiff, in effect, made a new contract with the defendant, under which the car of paper was to be sold by the defendant on the best terms available, after which the parties were to settle the matter between themselves, so that the defendant would not suffer any loss. The defendant also contended that the paper was not such as fulfilled the terms of the contract it had with the plaintiff. On the other hand, it was the plaintiff's contention that the paper shipped

did fill the requirements of the terms of the contract as to quality, and further, that no subsequent agreement was entered into by it with the defendant, following the rejection of the consignment by the consignee.

The plaintiff contends that the defendant did not put the quality of the goods in issue, by the affidavit of merits which it filed. The contract between the parties was for one car of "No. 1, soft white shavings (free of foreign materials) * * * Mill weights and grading to govern." The contract called for shipment to the defendant at Hamilton, Ohio. The defendant was located in Chicago. The record shows that the plaintiff kept asking the defendant for shipping directions, which were not forthcoming until sometime in January or February, when the defendant directed that the car of paper in question be consigned to The Champion Coated Paper Company at Hamilton, Ohio.

As already stated, the consignee rejected the paper upon its arrival at Hamilton. By its affidavit of merits the defendant alleged that it ordered No. 1 soft white shavings, to be shipped by the plaintiff to The Champion Coated Paper Company, subject to the latter's weights and grading; that "the plaintiff well knew that the defendant would not have any opportunity to examine said merchandise, but must rely upon the plaintiff to see to it that said merchandise was No. 1 soft white shavings according to the grading of said Champion Coated Paper Company, which grading plaintiff well knew and undertook to furnish the same at its, the plaintiff's risk"; that the merchandise was shipped by the plaintiff to the said consignee and upon its arrival the consignee notified the defendant that it "had rejected the said merchandise because, as it claimed, the merchandise was not No. 1 soft white shavings according to its gradings"; that the defendant thereupon notified the plaintiff of this rejection, after which the plaintiff entered into a new

agreement with the defendant, relative to the disposing of the consignment, as already stated. In our opinion, this affidavit puts in issue the question of the quality of the shipment made by the plaintiff under the contract, under the defendant's theory of the meaning of the contract, which apparently was that the plaintiff was to ship a car of No. 1 soft white shavings, free of foreign materials, and such as would fulfil the requirements of the grading of the consignee, of which requirements the plaintiff had knowledge. It is further, apparently, the defendant's theory that the consignee mill was to be the judge as to whether the paper shipped was soft white shavings, free from foreign materials according to its grading, and it alleged in its affidavit of merits that the consignee mill took the position that it was not, and therefore, the plaintiff had failed to fulfil the terms of the contract.

In support of its appeal the defendant contends both that the evidence is insufficient to sustain the verdict, as a matter of law, and that the verdict and judgment are against the manifest weight of the evidence. In connection with the first contention, the defendant urges that in order to make out its case, it was incumbent upon the plaintiff to show that the paper shipped was No. 1 soft white shavings, free from foreign materials, according to the grading of the consignee, and that it failed to so show by the testimony submitted. This contention involves the question of the meaning of the phrase, "Mill weights and grading to govern," as found in the contract. The plaintiff submitted testimony on that question, by asking a witness who apparently was qualified to answer, what the meaning of that expression was, as found in a contract of this kind. Defendant contends that the trial court erred in overruling its objection to that question. If it was the plaintiff's position that this expression had a well known meaning in the waste paper trade, it was proper to permit it to

show this. In any event, no harm was done in connection with the court's ruling, for the witness gave an answer which would seem to be one in keeping with the apparently obvious meaning of the phrase, namely, that it meant "that the buyer designates the mill to act in its place, to determine the merchandise as to quality and weight." A witness for the defendant gave a somewhat different meaning to this phrase, saying that by it the defendant appointed "the mill as the judge to grade that particular material."

In our opinion, it is quite obvious that under such a contract the plaintiff undertook to ship a car of No. 1 soft white shavings, free of foreign materials, and that by the terms of the contract to which reference has been made, the car upon arrival at the mill of the consignee was to be subject to the latter's inspection as to whether or not the consignment was, in fact, No. 1 soft white shavings free from foreign materials. There is no evidence in the record showing or tending to show that the different paper mills adopted different gradings on this line of material, as might be inferred from the allegation made by the defendant in its affidavit of merits. As stated above, under the terms of the contract, this shipment by the plaintiff was subject to the inspection of the consignee mill. If the plaintiff did ship such paper as was in fact No. 1 soft white shavings, free of foreign materials, it complied with its contract with the defendant. The plaintiff introduced evidence tending to show that the car of material it shipped was No. 1 soft white shavings, free of foreign materials, and it therefore made out a prima facie case on that issue. In this connection, one of the plaintiff's witnesses testified that the car of paper shipped to The Champion Coated Paper Company "contained No. 1 soft shavings free of foreign materials." The defendant contends that the trial court erred in denying its motion to strike out that testimony, on the ground that the question of what the car contained was an issue the

Acme Waste Paper Co. v. U. S. Paper Supply Co., 233 Ill. App. 262.

jury was to pass on. In our opinion the ruling of the court was proper. The answer of the witness may not be said to have involved his conclusion, as would be the case where a witness would be asked whether certain conduct was negligence. The question here involved was purely one of fact and although an ultimate fact, it was one about which the witness could properly be interrogated. The car of paper shipped by the plaintiff was either No. 1 soft white shavings free of foreign materials or it was not. No. 1 soft white shavings free of foreign materials, was a trade article with which neither the court nor the jury were familiar. The question of whether the shipment involved was such as to comply with the requirements of that trade article was the proper subject of opinion evidence on the part of witnesses who might be shown to be familiar with the subject and competent to give an opinion. Witnesses for the plaintiff, who had to do with this shipment, might properly testify that in their opinion it was; while witnesses for the defendant, who had to do with the receipt of the shipment might properly testify that in their opinion it was not. Such was the effect of testimony submitted by the respective parties. From what has already been said, it will be seen that the state of the evidence is such as to make it impossible for this court to say that the verdict and judgment are against the manifest weight of the evidence. The testimony submitted as to the character of this shipment, and also on the question of whether, after its rejection the parties entered into any agreement for the disposition of the material, as claimed by the defendant, was conflicting, and in that state of the record, we would not disturb this judgment if the record were free from procedural errors. As there must be a new trial of this case, however, by reason of such errors, we shall not make further comment on the evidence.

It appears from the record that in January, 1922, the plaintiff sued out of the office of the clerk of the

municipal court of Chicago a *dedimus potestatem*, directed to a notary public in Hamilton, Ohio, to take the depositions of two witnesses upon oral interrogatories, said depositions to be taken at 10 o'clock on the morning of January 25, 1922, and to be continued from day to day until completed. These two witnesses were respectively the vice president and the assistant purchasing agent of the Champion Coated Paper Company. The depositions of these witnesses were duly taken, the defendant being present at the time, by its counsel, and cross-examining the witnesses. When completed, the depositions were duly returned to the clerk of the municipal court of Chicago and by him opened and placed in the files of the case, in conformity with the rules of that court. It further appears that on October 2, 1922, this case was duly and regularly reached upon the trial calendar of the municipal court, whereupon, a continuance was had until November 2, 1922. It further appears that on October 5, 1922, the court granted the plaintiff's motion "for leave to withdraw said depositions permanently from the files of this court and cause, so that the same might not be available as evidence in said cause." It does not appear from the record whether the defendant had notice of that motion, or, if it had, whether it was present in court. The record further indicates that no objection was interposed by the defendant, if it was present in court. The record further shows that on October 9, 1922, the defendant did appear and move the court to vacate this order of October 5, giving the plaintiff leave to withdraw the depositions and to order the plaintiff to restore the depositions to the files. This motion the court denied, the record indicating that the court was of the opinion that the plaintiff had the right "to withdraw said depositions and to retain the same permanently, so that the same may not be read in evidence." This action of the trial court is assigned as error.

In support of the ruling of the trial court, with re-

gard to these depositions, the plaintiff has called our attention to *Adams v. Russell,* 85 Ill. 284; *Doggett v. Greene,* 254 Ill. 134, and *McEvoy v. Court of Honor,* 184 Ill. App. 317. In the latter case it appeared that prior to the time of the trial, the testimony of the plaintiff had been taken by deposition in the State of Mississippi, where the plaintiff then resided, and that subsequently and before the trial, this deposition had been withdrawn from the files by the plaintiff and with the court's permission. It was contended that the court erred in permitting the plaintiff to withdraw the deposition and the court held that the plaintiff had the right to withdraw her deposition prior to the time of the trial if she so desired, citing the other two cases above referred to. The court then observed that the plaintiff "was present in court at the time of the trial and if appellant (the defendant) desired to use her as a witness, they had the opportunity to do so." In the case of *Adams v. Russell, supra,* the court said, "It has always been understood, that where one party takes a deposition, unless he obtains leave before the trial and withdraws it, if he fails or refuses to read it, the other party may introduce it. All depositions, so long as they are on file in the clerk's office, when properly taken and containing evidence pertinent to the issue, may properly be used as evidence on the trial." The question of the right of a litigant to remove depositions from the files after they had been duly taken and returned to the court was, in no way, involved in that case. The action of the trial court there passed upon, was the overruling of the objection of the party who had taken the deposition of a witness, to the reading of the cross-examination of the witness by the other party to the case. In *Doggett v. Greene, supra,* the deposition of a witness who was dead at the time of the trial had been taken prior to the death, by the defendant. On the trial, the plaintiff offered in evidence certain questions and answers contained in the deposition, both in the direct and

cross-examination, making the witness their own for that purpose. The defendant objected to the reading of the cross interrogatories and answers, on the ground that having made the witness their own the plaintiff was precluded from offering his cross-examination. The court held the contrary, citing *Adams v. Russell, supra,* and observing that "where one party takes a deposition which is not withdrawn before the trial and fails or refuses to read it, the other party may introduce it and may read the cross-examination." Other decisions substantially to the same effect are to be found in *McCormick Harvesting Machine Co. v. Laster,* 81 Ill. App. 316; *Bartlett v. Slusher,* 117 Ill. App. 138 and *Gustus v. Murdoch,* 154 Ill. App. 270. None of these cases, however, is applicable to the point involved in the case at bar.

On this question the defendant has called our attention to *Brandon v. Mullenix,* 67 Tenn. 446; *Nichols & Co. v. Jones,* 36 Texas 448, and *Howe, executor v. Mutual Reserve Fund Life Assn.,* 115 Ia. 285. In the *Brandon* case, it appeared that the deposition of one Hedrick had been taken by the plaintiff and duly filed in the cause, but upon the trial the plaintiff chose not to read it. Thereupon, the defendant offered to read it in evidence for himself, but, on objection, the court refused to allow it to be read. This was held to be error. This case also does not pass upon the point involved in the case at bar. In the course of its opinion, the court said: "The deposition, when filed, stood as a witness summoned. The party summoning the witness would not be bound to examine him, yet the other party might introduce him, making him his own witness thereby. So with a deposition." In the *Nichols* case, the deposition of one Hughes had been taken by the defendant but according to the brief of the plaintiff it had "mysteriously disappeared from the papers of the cause." In passing upon the matters there involved, the court indicated that where the deposition of a witness had been taken by one of

the parties and the other party had declined to cross-examine the witness, such other party would have no interest in the deposition and therefore the party taking it might refuse to offer it, "reserving his right to impeach the witness if offered by the plaintiffs." In the *Howe* case, reference was made to several sections of the Iowa code, providing that depositions returned to the court were original papers in the case and a part of the court records and that they could not be taken from the office of the clerk, unless by written consent of the parties and at no time without the leave of the court.

We are of the opinion that the proper status of returned depositions is intimated by language used by this court in the case of *Pennsylvania R. Co. v. The John Anda Co.*, 131 Ill. App. 426, where it was said that "A party taking a deposition may, in his discretion, abandon it on the trial. In this condition the opposing party may use it, if he desires. When he does use it, he is bound by it to the same extent as any other evidence he proffers." On the record in the case at bar, we are of the opinion that the trial court should have allowed the motion of the defendant to require the plaintiff to restore the depositions of the Ohio witnesses to the files in the office of the clerk. Where a party, months before the case is reached for trial, takes the depositions of nonresident witnesses, on oral interrogatories, at some distant point where they are to be found, the other party to the cause appearing at the time and place designated and cross-examining the witnesses, and where such depositions are returned in due form and become a part of the files and the records of the cause, they should not thereafter be removed "permanently from the files of the court and cause, so that the same might not be available as evidence in the cause," as was done in the case at bar. As stated by this court in the case last referred to, the party taking the deposition might in his discretion, abandon it upon the trial, but, as also

274    Appellate Courts of Illinois.

Acme Waste Paper Co. v. U. S. Paper Supply Co., 233 Ill. App. 262.

said by this court in that case, if the party taking the deposition does abandon it at the trial, the opposite party may use it if he so desires and if he is to be accorded that right, the deposition must of course remain as a part of the court files, where it will be available for such use. It is no answer to say, as the plaintiff does in the case at bar, that sufficient time remained after the depositions were removed to permit the defendant if he chose, to take the depositions of these witnesses over again and have them available for use by the time the cause was actually reached for trial. As is pointed out by the defendant in its brief, it frequently happens that most important evidence is brought out on cross-examination, by reason of openings which occur in the taking of the direct examination. It appears from the record in the case at bar that the testimony of the witnesses whose depositions were taken, turned out to be unfavorable to the plaintiff, the moving party in the taking of the depositions, especially in connection with the cross-examination of the witnesses. The plaintiff was within its rights in electing not to make use of the depositions, but the defendant had the right to use them if it chose to so do, and to preserve that right it was the duty of the trial court to sustain an objection interposed to a motion submitted by the plaintiff for the permanent removal of the depositions, or when such action had been taken, to allow a motion on the part of the defendant to have the depositions restored to the files.

We are further of the opinion that the trial court erred in several rulings upon the evidence. One Grossman testified that the car of waste paper shipped by the plaintiff to the Champion Coated Paper Company was No. 1 soft white shavings, free of foreign materials. Evidence to the same effect was given by another witness for the plaintiff, who supervised the packing of the bales of paper which were shipped in this car. One Flett, a scrap paper

Acme Waste Paper Co. v. U. S. Paper Supply Co., 233 Ill. App. 262.

broker, who represented the Champion Coated Paper Company in this transaction, stated that in his opinion the car of paper shipped by the plaintiff to that Company, on the defendant's order "was not a good delivery under a contract calling for No. 1 soft white shavings, free from foreign materials subject to mill gradings and weights." Neither upon examination nor cross-examination of this witness was any reference made to any conversation the witness might have had with Grossman. In rebuttal, Grossman was called to the stand and, over objection of the defendant, testified that he had had a talk with Flett as to whether the car in question contained merchandise answering the description of soft white shavings, free of foreign materials, and that Flett had said that it was a good delivery for an order calling for such material, and further, that Flett had stated that the Champion Coated Paper Company had refused the car "because the order they had with the U. S. Paper Supply Company called for soft white shavings, free of coated." Objections of the defendant to this testimony should have been sustained. It was brought out in an apparent effort to impeach Flett, and was improper, inasmuch as no foundation had been laid for the impeaching questions, in connection with the examination of Flett.

While Grossman was testifying in connection with the plaintiff's direct case, he testified that after the defendant notified the plaintiff that the car had been rejected by the Champion Coated Paper Company, he went to Hamilton and talked with Randall (whose deposition had previously been taken), and, over the defendant's objection, he was permitted to relate what Randall had said to him on this visit, and furthermore, he was permitted to testify that he had also talked with a receiving clerk employed by the Champion Coated Paper Company, and to testify as to what the receiving clerk told him that Mr. Randall had told the receiving clerk. These conversations occurred out

276    APPELLATE COURTS OF ILLINOIS.

Acme Waste Paper Co. v. U. S. Paper Supply Co., 233 Ill. App. 262.

of the presence of the defendant and were, of course, hearsay, and were subject to the defendant's objections, which should have been sustained.

One Hoffman was called as a witness for the plaintiff in rebuttal and he was asked if he knew what was meant by No. 1 soft white shavings, free of foreign materials, and how that expression was known to the trade. This was objected to as not proper rebuttal and we cannot say that the court abused its discretion in sustaining the objection. Counsel for the plaintiff then asked permission to make an offer of proof for the purpose of the record and counsel for the defendant suggested that the offer be made out of the presence of the jury, whereupon, the court remarked, "If he wants to make it in the presence of the jury, let him." Counsel for the plaintiff then stated, in the presence of the jury, that he offered to prove by the witness that the phrase referred to, meant "free of wood pulp and colored paper, and does not mean free of coated stock; the coated stock should not exceed ten per cent. I also offer to make the same character of proof by another Mr. Grossman, who has been in the waste paper business for fifteen years." Counsel should not have been permitted to make his offer of proof in the hearing of the jury.

It appeared from the evidence that the defendant had brought suit in the Federal court against the Champion Coated Paper Company, and it was the plaintiff's contention that by this suit the defendant had attempted to collect from the Champion Coated Paper Company on the defendant's sale of this same car of paper to that Company and that this was some evidence tending to show that the defendant had accepted the plaintiff's delivery of the car in question to the Champion Coated Paper Company. The pleadings in the case referred to were introduced in evidence by the plaintiff in the case at bar. The defendant also contends this was error. In our opinion, the introduction of these pleadings was not erroneous.

It was some evidence, at least tending to show, that the defendant had taken a position which was inconsistent with the position it was endeavoring to maintain here. It was, of course, open to the defendant to make such showing as it could in accounting for the legal proceedings instituted by it, on this car, against the Champion Coated Paper Company.

The defendant contends, also, that the trial court erred in giving the charge to the jury, in that, by the charge, the jury were told that if they believed from a preponderance of the evidence that the plaintiff had proved certain points, which were specifically referred to in the charge, then the plaintiff would be entitled to a verdict, and further, that though the jury might believe from the evidence that the paper shipped was not of the quality contracted for, if they further believed that the defendant had accepted the same, then the plaintiff would be entitled to a verdict. The objection urged is that in so instructing the jury the trial court ignored an important element in the defense, namely, the contention that after the paper had been rejected the plaintiff and the defendant had entered into a new arrangement, under which the plaintiff agreed that the defendant was to sell the paper at the best terms obtainable, for the plaintiff's account. This objection would have been well taken if the charge to the jury had been in the form of written instructions and any given peremptory instruction had omitted the element of the case above referred to. In such an event, the faulty instruction could not have been cured by some other instruction which did include that element. But in the case at bar, the charge to the jury was given orally and in the course of this oral charge the trial court told the jury that if they believed from the evidence that the parties did enter into a new contract, as contended by the defendant, then they should find the issues for the defendant. In connection with the charge to the jury, the court stated that if the jury found from the evidence that

payment of the purchase price for the merchandise in question, had been unreasonably and vexatiously withheld by the defendant, then they might add to the amount of the purchase price an amount equal to five per cent, from the day of delivery to the time of the returning of the verdict. In our opinion, the evidence, as appearing in this record, is not such as to support the giving of that instruction.

Further complaint is made by the defendant, with regard to the verdict which the jury returned. As the case has to be tried again, it will not be necessary to comment on this question.

Because of the procedural errors to which we have referred the judgment of the municipal court is reversed and the cause is remanded to that court for a new trial.

*Judgment reversed and cause remanded.*

TAYLOR, P. J. and O'CONNOR, J. concur.